**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

**ROY SHELTON**                                                                    **PLAINTIFF**

**v.**                              **No. 4:17-CV-00061-SWW-PSH**

**NANCY A. BERRYHILL,**
**Acting Commissioner,**
**Social Security Administration**                          **DEFENDANT**

## RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## REASONING FOR RECOMMENDED DISPOSITION

Roy Shelton applied for social security disability benefits with an alleged disability onset date of March 15, 1995. (R. at 60). After a hearing, the administrative law judge (ALJ) denied his application. (R. at 20). The Appeals Council denied Shelton's request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Shelton has requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

**I.       The Commissioner's Decision**

The ALJ found that Shelton had the severe impairments of degenerative disk disease of the lumbar spine, osteoarthritis, and adjustment disorder with mixed depression and anxiety. (R. at 11). As a result of the impairments, the ALJ determined that Shelton had the residual functional capacity (RFC) to perform light work, with the additional limitations that he could not climb ladders, ropes, or scaffolds; could only occasionally climb ramps or stairs, kneel, crawl, crouch, stoop, or balance; could not have exposure to unprotected heights or control or operate foot controls with his left lower extremity; could only perform work that allows for the use of a cane as needed to access the workstation; would be limited to unskilled duties where interpersonal contact is incidental to the work performed; could perform work where the complexity of one to two step tasks would be learned and performed with few variables and little judgment by rote; required supervision that is simple, direct, and concrete; and would be limited to SVP 1 or 2 jobs that can be learned within 30 days. (R. at 13–14). Shelton had no past relevant work. (R. at 17). The ALJ took testimony from a vocational expert (VE) and determined that Shelton could perform jobs such as furniture rental consultant or photocopy machine operator. (R. at 19–20). The ALJ therefore held that Shelton was not disabled. (R. at 20).

## II.     Summary of Medical Evidence

Shelton was diagnosed with minimal osteoarthritis in the right hip via radiography on February 3, 2012. (R. at 299). An MRI in March 2013 showed degenerative disk disease of the lumbar spine with herniated nucleus pulposus and neural foraminal stenosis. (R. at 24). He received a lumbar interlaminar epidural injection for radiculopathy and back pain. (R. at 24).

Consultative examiner Garry Stewart, M.D. found normal range of motion, normal reflexes, negative bilateral straight leg raise test, normal grip strength, normal gait, and normal limb function. (R. at 303–04). Dr. Stewart found no limitations. (R. at 304–05).

A November 2013 MRI found minimal disk bulge at L2–L3 and L3–L4; mild disk osteophyte bulge at L4–L5; and grade 1 anterolisthesis of L5 on S1 with left foraminal disk protrusion/extrusion abutting the left S1 nerve root, moderate left and mild right facet hypertrophy, and moderate left neural foraminal narrowing. (R. at 318–19). An EMG in December 2013 showed positive sharp waves at multiple levels in the left lumbar paraspinal musculature, consistent with left lower lumber radiculopathy. (R. at 327).

Shelton did not seek treatment for 15 months, but did establish care with a new provider in March 2015. (R. at 385). He complained of a cyst, back pain, and intermittent bloody diarrhea. (R. at 385). He stated that injections for his back pain had not been completely effective. (R. at 385). He had tenderness on palpation in the lumbosacral spine, but a straight leg raising test was negative. (R. at 387).

He presented in April 2015 for back pain radiating to the left foot that was aggravated by bending and repetitive lifting and also complained of fatigue, arthralgias, and myalgias. (R. at 366). He displayed slow gait, decreased range of motion in the lumbar spine, and pain with range of motion in the lumbar spine. (R. at 367). In May 2015, he reported pain in both hips, shooting pain in the right leg, and had begun using a cane to ambulate. (R. at 360). He continued to show slow gait, decreased range of motion in the lumbar spine, and pain with range of motion in the lumbar spine. (R. at

361). A new MRI revealed mild degenerative changes of the lower lumbar spine with no neural compressive lesion identified. (R. at 373).

In June 2015, Shelton presented for examination concerning complaints of chest pain. (R. at 452). It was planned that he would have an EKG for ischemia evaluation. (R. at 454). On July 8, 2015, Shelton had a normal EKG. (R. at 450). He received an epidural steroid injection on July 28, 2015. (R. at 455).

Concerning mental impairments, during discharge from prison, Shelton underwent a psychological examination and was diagnosed with depressive disorder, NOS, and polysubstance abuse in remission. (R. at 246). John Faucett, Ph.D. performed a consultative examination in July 2013. (R. at 309). Dr. Faucett diagnosed adjustment disorder with mixed anxiety and depressed mood. (R. at 312). Dr. Faucett reported that Shelton could communicate and interact in a socially adequate manner, could communicate in an intelligible and effective manner, could cope with the mental/cognitive demands of basic work-like tasks, could adequately attend to and sustain concentration on tasks, could sustain persistence in completing tasks, and could complete work-like tasks in an acceptable timeframe. (R. at 313). In September 2013, Shelton took a PHQ-9, which suggested severe depression. (R. at 341–42). There is no record of Shelton seeking mental health treatment after this date, though he stated he still had anxiety, depression, and sleep disturbances in July 2015. (R. at 453).

## III.    Discussion

The Court reviews to determine whether substantial evidence on the record as a whole exists to support the ALJ's denial of benefits. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" exists where a reasonable mind would find the evidence adequate to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925

(8th Cir. 2009). The Court will not reverse merely because substantial evidence also supports a contrary conclusion. *Long*, 108 F.3d at 187.

Shelton argues that the ALJ erred in assessing his RFC, did not perform a proper credibility analysis and erroneously discredited him based on a fifteen-month treatment gap, improperly relied on contradictory evidence, and failed to properly consider the grids.

### a. The RFC Determination

Shelton first argues that the ALJ erred in finding him capable of performing the full range of light work. He contends that the medical records support additional limitations that the ALJ should have included.

Initially, Shelton is mistaken. The ALJ included several additional postural and mental limitations in the RFC. Nevertheless, Shelton argues that his back impairment prevents him from engaging in the significant walking and standing that is required to perform light work. This argument still fails, however.

The record contains no limitations on the ability to walk or stand from a physician. The only opinion offered by an examining physician proposed no limitations on the ability to stand or walk. (R. at 305). Furthermore, Shelton's physician, Brian Blair, M.D., did not see a need to prescribe pain medication. (R. at 362, 373). There is simply no objective evidence to show that Shelton has greater limitations in his ability to walk or stand than the ALJ found and—for reasons stated below—the ALJ justifiably did not rely on Shelton's subjective complaints.

### b. The Credibility Determination

Shelton next argues that the ALJ erred in finding his allegations of disabling pain not entirely credible. He particularly objects to the degree of consideration the ALJ gave

to the fifteen-month gap in treatment, contending that his testimony sufficiently explained the treatment gap.

The Court defers to the ALJ's credibility determination when it is supported by good reason and substantial evidence. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). The ALJ must consider "(1) the claimant's daily activities; (2) the duration and intensity of the pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions." *Miller v. Sullivan*, 953 F,2d 417, 420 (8th Cir. 1992) (*citing Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ need not specifically address each factor. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Multiple factors weigh against Shelton's credibility. As noted above, Dr. Blair saw no need to prescribe pain medication. (R. at 362, 373). Dr. Stewart found none of the limitations that Shelton claimed. (R. at 304–05). It is true that Shelton testified that he had insurance problems; however, his testimony was specifically that he could not find a mental health provider to take QualChoice but had recently switched to Blue Cross and was about to see someone for depression and anxiety. (R. at 35). This does not explain the treatment gap concerning his back pain, and a failure to seek treatment weighs against a claimant's credibility. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

Shelton also objects to the ALJ's discrediting of lay witness statements. (R. at 50–58, 203–05). The ALJ found these statements were likely colored by affection for Shelton and that the witnesses had no medical training to assess Shelton's impairments. (R. at 16). As the Commissioner correctly notes, such statements can be discredited based on the same evidence used to discredit the claimant's statements. *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998). As the objective medical evidence, lack of treatment,

and other factors weigh against Shelton's credibility, they equally weigh against these lay witness statements.

### c. Opinion Evidence

Shelton further maintains that the ALJ's RFC is unsupported by the opinion evidence because the ALJ assigned little weight to Dr. Stewart's opinion and the opinions of the State Agency consultants while giving some weight to Dr. Faucett's opinion and the lay witness statements. (R. at 17–18). Shelton suggests that if the opinions given some weight are more persuasive than those with little weight there is no way Shelton could be found capable of light work.

The ALJ functions to resolve conflicts in the medical evidence. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). The State Agency physicians found Shelton capable of medium work. (R. at 70, 82). Dr. Stewart found no limitations. (R. at 304–05). Overall, the ALJ's RFC limitation to a restricted range of light work is extremely favorable in light of these opinions. The ALJ reasonably added restrictions based on testimony and lay witness statements, and the undersigned cannot find that the RFC determination is unsupported by substantial evidence on the record as a whole

### d. The Grids

Shelton's final argument is that the ALJ should have applied a borderline age category rule when considering the grids. Shelton argues that he would be disabled under the grids if the ALJ had applied the closely approaching advanced age category and found him capable of only sedentary work.

Shelton's argument necessarily fails. For the reasons stated above, the RFC determination is supported by substantial evidence on the record as a whole. As such, it

would make no difference whether the ALJ applied the higher age category, as Shelton would still not be found disabled. 20 C.F.R. Pt. 404, Subpt. P., App. 2.

## IV.    Recommended Disposition

The ALJ properly formulated the RFC, properly weighed the evidence, performed a proper credibility analysis, and properly applied the Medical-Vocational Guidelines. The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error. For these reasons, the undersigned magistrate judge recommends AFFIRMING the decision of the Commissioner.

It is so ordered this 7th day of March, 2018.

_____
PATRICIA S. HARRIS
UNITED STATES MAGISTRATE JUDGE